UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AMITYVILLE MOBILE HOME CIVIC
ASSOCIATION, ROBERT BRNIC, LINDA KAVUN,
MARION BROWN, GARY SANDEFUR, JEAN TIANO,
PAMELA SANDEFUR, ED BURKES, MARK TIANO,
EVELYN DOWNING, ELIZABETH ORTIZ, JOSE
GIRALDO, ANGEL HERNANDEZ, NELSON
CORTES, CARMEN CORTES, ROSA GUTIERREZ,
PATRICIA KELLY, CARLOS ANTONIO GARZA,
ELVIS CORTES, JORGE SIERRA, EDITH
SALMERON, CHARLES HERSH, CHRISTIAN
SANABIA, DANIEL NEVINS, PAT HASLAM, EDWARD
CARMEN, JOHN LARSEN, JAMES KAVUN, EDWARD
HAVEKOST, CARL H. HOLMGREN, JR., JOHN ROTHE,
KATHY ROTHE, KAREN BRINER, MARY LEE
STRATTON, PATRICIA LEAP, DOROTHY KETCHAM,
TIMOTHY MCCARTHY, AGUSTINE GUTIERREZ,
ANTOINETTE RUSSO, LAURA ZILINSKI, PHILLIP
CAMBPELL, LAURIE NEVINS, WILLIAM MALONE,
MARECK CZAPLICKI, JAN CZAPLICKI, DENNIS
ADREANO, WILMA STUBBS, SANDRA WHITNEY,
DONNA AMADEO, FRANK ORKIN, BRETT KESSLER,
LANA JESSEN, DEBORAH SINNOTT, MIKE WAGNER,
BLANCA WAGNER, JOHN SCHULTZ, MILDRED CORTES,
BARBARA O'CONNOR, ERICA O'CONNOR, BARBARA
MULLEN, WILLIAM HOUGH, DENISE HOUGH, HERVIN
SIERRA, LARRY GREENFIELD, DOLORES LARSEN,
BERNARDO ROLDAN, CHARLENE ROLDAN, ARTHUR
PLOWDEN, JADWIJA CZAPLICKI and JAMES
SCHUMAKER,

           Plaintiffs,

  -against-


TOWN OF BABYLON, TOWN OF BABYLON ZONING
BOARD OF APPEALS, TOWN OF BABYLON PLANNING
BOARD and NEW FRONTIER II, LLC,

           Defendants.
------------------------------------------------------------X
FEUERSTEIN, District Judge.

FILED
CLERK

3/26/2015 2:29 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**OPINION AND ORDER**
**14-cv-2369 (SJF)**

Before the Court is defendant New Frontier II, LLC's ("Frontier") motion to dismiss plaintiffs' complaint pursuant to Federal Rules of Civil Procedure ("FRCP") 12b(1) and (6) and for sanctions pursuant to FRCP 11. For the following reasons, Frontier's motion to dismiss for lack of subject matter jurisdiction is **GRANTED** and plaintiff's complaint is dismissed with prejudice. Frontier's motion for sanctions is **GRANTED**.

**I.     Background**

*Parties*

Frontier Trailer Park ("Frontier Park"), located at 805 Broadway, Amityville, New York ("Property"), has been a trailer park since the 1960's. Compl. ¶ 1. Plaintiffs are the Amityville Mobile Home Civic Association ("AMHCA") and residents of Frontier Park. *Id.* at ¶¶ 4-42.

Defendant Town of Babylon is located in Suffolk County, New York.[1] Defendant Town of Babylon Planning Board studies and makes zoning recommendations to the board and approves the filing of development subdivision maps. *Id.* at ¶ 44. Defendant Town of Babylon Zoning Board of Appeals reviews and conducts public hearings on applications for variances of the zoning ordinances. *Id.* at ¶ 45. Defendant Frontier is a Delaware company registered to do business in New York. *Id.* at ¶ 46.

*Town of Babylon Resolution Number 743*

Frontier, a private developer, filed an application with the Town to rezone the Property from a mobile home park to a five hundred (500) residential unit with one (1) and two (2) bedroom apartments and up to forty-five thousand (45,000) square feet of retail space. *Id.* at ¶¶ 48, 51; Dec.

---

[1] Defendants Town of Babylon, Town of Babylon Planning Board and Town of Babylon Zoning Board of Appeals are collectively referred to as the "Town."

Yaffe ¶ 3. On December 29, 2011, the Town Board of the Town of Babylon granted Frontier's application to change the zoning from E Business and B Residence to Multiple Residence use, subject to various conditions and covenants under Resolution 743 ("Resolution 743"). Compl., Exh. B. Pursuant to Resolution 743, the zone change "shall not be effective until there has been filed with the County Clerk of Suffolk County the following Covenants and Restrictions to run with the land." *Id.* The covenant and restrictions require, *inter alia*, that "[t]wenty (20) percent of the units will be affordable or workforce housing," which "[u]nits will be scattered equally throughout the site." *Id.* In addition, "[t]he Affordable/workforce units shall be targeted to qualified households making 80% or less than the Suffolk County HUD Income Limits" and the rents charged for said units "shall conform to HUD Fair Market Rents set for Suffolk County." *Id.* On January 12, 2012, the covenants and restrictions were recorded against the Property with the Suffolk County Clerk. Dec. Yaffe, Exh. C.

### *The Relocation Plan*

Resolution 743 also provided that the change in zoning was "[s]ubject to relocation plan accepted and approved by the Town of Babylon." Compl., Exh. B, p. 2 ¶ 4. On July 17, 2012, by Resolution Number 551, the Town Board of the Town of Babylon adopted the relocation plan ("Plan") for mobile homes and households on the Property, subject to the approval of the Town Attorney. Dec. Yaffe, Exh. D. On January 16, 2013, the Town Attorney reviewed and approved the Plan and it was adopted. *Id.*

The Plan provides for a maximum of twenty-thousand dollars ($20,000) per household in relocation assistance, limited to residents in a household who: (1) actually occupy a unit; (2) are in good standing; (3) submit, to the Independent Relocation Consultant, the name and contact

information of the resident who will receive the relocation assistance on behalf of the household; and (4) vacate the premises within ninety (90) days of receiving a notice to vacate. *Id.* at 1.C; 1.D(c)(1); and 2. On July 16, 2013, by Resolution Number 494 ("Resolution 494"), the Town Board of the Town of Babylon authorized the Town Supervisor to execute an agreement with the Long Island Housing Partnership ("LIHP") to administer the relocation plan for the residents of Frontier Park. Compl., Exh. C.

According to the complaint, Resolution 494 nullified Resolution 743 by forcing plaintiffs to sign releases and consents to Final Judgments, thereby losing their rights to affordable/workforce housing. *Id.* at ¶ 1. Plaintiffs allege that the relocation plan requires households to "sign forms consenting to be evicted" with "no right to return for 'Affordable Housing' or 'Workforce Housing.' " *Id.* at ¶ 57. Thus, the Plan allegedly requires those who accept the twenty-thousand dollars ($20,000) to vacate the Property, agree to a final judgment of possession and a warrant of eviction and to forfeit the right to return to any of the newly constructed units as tenants with subsidized rent. *Id.* at ¶ 59.

In addition, the "units of affordable housing promised by the Town resolution in 2011" were "to be enumerated and staggered through the course of the construction of the five (5) phases." *Id.* at ¶ 60. As there has been no approval for construction of Phases two (2) through five (5), based upon Resolution 494, the Property may be cleared of the mobile homes, removing approximately one-thousand (1000) Black and Hispanic residents from Frontier Park. *Id.* The Town, therefore, "has nullified its zoning to allow all white housing for all 500 units," despite Resolution 743's guarantee that one-hundred (100) park owners will be eligible for affordable or workforce housing. *Id.* at ¶¶ 60, 61. Plaintiffs allege that to the extent the one-hundred (100) units

are a property right guaranteed by Resolution 743, their rights are enforceable under the Fourteenth Amendment. *Id.* at ¶ 64.

The complaint alleges that defendants violated: (1) the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*; (2) 42 U.S.C. § 1981; (3) 42 U.S.C. § 1982; (4) 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment; and (5) 42 U.S.C. § 3608 and its "affirmatively furthering" obligations.

## II.     Discussion

### A.     Legal Standard for FRCP 12(b)(1) Motions

Pursuant to Article III, § 2 of the United States Constitution, the jurisdiction of the federal courts is limited to "Cases" and "Controversies," which "restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.' " *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1528 (2013) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)). Thus, federal courts require that a party have a legally cognizable interest in a case's outcome to "ensure[] that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Id.*

Where there is no case or controversy, FRCP 12(b)(1) provides that a party may move to dismiss a case for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."). In order to survive a defendant's motion to dismiss for lack of subject matter jurisdiction, a plaintiff must allege facts "that affirmatively and plausibly suggest that it has standing to sue."

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In deciding such a motion, the Court may consider materials beyond the pleadings, *Makarova*, 201 F.3d at 113, and must "accept as true all material factual allegations in the complaint," *Atl. Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).

**B.     Frontier's Motion to Dismiss for Lack of Subject Matter Jurisdiction**[2]

Frontier contends that this case should be dismissed for lack of subject matter jurisdiction because plaintiffs' claims are based upon the incorrect premise that the relocation plan requires Frontier Park residents to sign a release giving up their "rights" to the one-hundred (100) affordable/workforce units. Mem. in Supp. p. 16. Frontier argues that the Court's subject matter jurisdiction cannot be invoked to state what the law would be based upon a hypothetical set of facts and, consequently, where the alleged harm has not yet occurred, there is no actual case or controversy. *Id.*

"The hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation." *Evans v. Lynn*, 537 F.2d 571, 591 (2d Cir. 1975). Standing to sue, in the Constitutional sense, "is the showing by a plaintiff that his particular grievance meets this standard, the 'essence' of which is the presence of 'injury in fact' suffered by the plaintiff as a result of the defendant's actions." *Id.* (internal footnotes omitted). " 'Article III standing consists of three 'irreducible' elements: (1) *injury-in-fact,* which is

---

[2] When presented with motions under both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), the Court "must first analyze the 12(b)(1) motion to determine whether the court has the subject-matter jurisdiction necessary to consider the merits of the action." *Melnitzky v. HSBC Bank USA*, No. 06 Civ. 13526, 2007 WL 1159639, at *5 (S.D.N.Y. Apr. 18, 2007).

a 'concrete particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability,* or a non-speculative likelihood that the injury can be remedied by the requested relief.' " *In re Vivendi Universal, S.A. Sec. Litig.*, 605 F. Supp. 2d 570, 574 (S.D.N.Y. 2009) (quoting *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008)).

The complaint contains no allegations that any plaintiffs executed the documents associated with the Relocation Plan, nor does it allege that plaintiffs applied for the affordable/workforce housing units which were denied based upon their agreement to the Plan.

A sworn declaration in opposition by plaintiff Marion Brown ("Brown"),[3] states that the Town Attorney informed her and other Frontier Park tenants and owners that they should consent to removal from the park, and eviction from the premises, because "they did not want the current mix of tenants Afro-Americans [and] Hispanics to continue at the site"[4] and failed to advise the tenants/owners that the Suffolk County Planning Commission had allocated one-hundred (100) affordable housing units for them. Dec. Brown ¶ 3.

According to plaintiffs' memorandum in opposition, as opposed to Brown's sworn declaration, Brown allegedly requested an application for affordable/workforce housing from the Town of Babylon prior to the April 30, 2014 deadline for Phase I. Mem. in Opp. pp. 1-2. Brown was informed that she would first have to agree to the Plan, which would allegedly terminate her

---

[3] Brown is an officer with plaintiff Amityville Mobile Home Civic Association.

[4] Plaintiffs' memorandum in opposition does not address defendant's 12(b)(1) motion.

affordable/workforce housing rights. *Id.*

Based upon the foregoing, plaintiffs have not demonstrated that they have Article III standing. Contrary to plaintiffs' claims, Resolution 494 does not nullify Resolution 743, but merely authorizes the Town Supervisor to execute an agreement with LIHP to administer the Plan and the Plan, which requires tenants/owners who accept the twenty-thousand dollars ($20,000) to vacate the property, contains no terms whatsoever with regard to the affordable/workforce housing. Moreover, neither the resolutions, nor the Plan, give plaintiffs any right or interest in the one-hundred (100) units; per Resolution 743's covenants and restrictions, the affordable/workforce housing shall be targeted to qualified applicants and, therefore, plaintiffs must apply and demonstrate that they fall within the guidelines for the housing.

Second, plaintiffs cannot plausibly allege that execution of the Plan documents foreclosed any "right" to the affordable housing because the Plan contains no such provision. Nor can plaintiffs allege that they applied for and were denied affordable/workforce housing as a consequence of agreeing to the Plan's terms. Thus, even if Brown signed up for the Plan and not only requested, but actually submitted an application for affordable or workforce housing, any denial would not be on account of Resolution 494 or the terms of the Plan. Therefore, plaintiffs do not state a concrete particularized harm to a legally protected interest that is likely to be redressed by a favorable decision. *See Hoffman v. DiFalco*, 424 F. Supp. 902, 905 (S.D.N.Y. 1976) (" 'In sum, when a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be

gratuitous and thus inconsistent with the Art. III limitation.'") (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976)).

Accordingly, Frontier's motion to dismiss pursuant to FRCP 12(b)(1)[5] is granted and the complaint is dismissed for lack of subject matter jurisdiction.

## C. Legal Standard for FRCP 11 Motions

Pursuant to FRCP 11(b), "[b]y presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law . . . ; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Under FRCP 11(c), "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

"A court may require an attorney to pay costs if he 'so multiplies the proceedings in any case unreasonably and vexatiously.'" *Assoc. of Holocaust Victims for Restitution of Artwork and Masterpieces v. Bank Austria Creditanstalt AG*, No. 04 Civ. 3600, 2009 WL 3816976, at *3

---

[5] The Court lacks subject matter jurisdiction and does not reach Frontier's 12(b)(6) motion.

(S.D.N.Y. Nov. 10, 2009) (quoting 28 U.S.C. § 1927[6]). In the alternative, a court may impose attorney's fees under its "inherent power." *Id.* (citing *Revson v. Cinque & Cinque*, 221 F.3d 71, 79 (2d Cir. 2000)). Thus, whether sanctions are appropriate under FRCP 11 is within the discretion of the district court. *See id.* ("A district court may, in its discretion, impose sanctions against litigants who abuse the judicial process."). In exercising this discretion, however, the Second Circuit has held that Rule 11 sanctions should be "made with restraint," *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999), even if the court determines that Rule 11(b) has been violated, *Perez v. Posse Comitatus*, 373 F.3d 321, 325-26 (2d Cir. 2004).

"A Rule 11 violation occurs 'when it appears that a pleading has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'" *Kochisarli v. Tenoso*, No. 02 Civ. 4320, 2006 WL 721509, at *8 (E.D.N.Y. Mar. 21, 2006) (quoting *Dujardin v. Liberty Media Corp.*, 359 F. Supp. 2d 337, 360 (S.D.N.Y. 2005)). "'An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective standard of reasonableness, it is clear . . . that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.'" *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995) (quoting *Caisse Nationale de Credit Agricole-CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1995)).

---

[6] Title 28 U.S.C. § 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Frontier requests, in the alternative, attorneys' fees pursuant to § 1927.

**D.     Frontier's Motion for Sanctions**

Although the Court has dismissed this action for lack subject matter jurisdiction, it retains " 'the power to determine collateral issues, such as the appropriateness of sanctions.' " *Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 218 (E.D.N.Y. 2011) (quoting *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002)). *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395-96 (1990) ("a federal court may consider collateral issues after an action is no longer pending," including motions for costs, attorney's fees, contempt and Rule 11 sanctions because such issues do not constitute a "judgment on the merits of an action").

Frontier argues that plaintiffs and their attorneys should be sanctioned because they: (1) intentionally misled the Court by presenting factual contentions belied by the public record and lacking evidentiary support; (2) omitted facts of public record which did not support their claims; (3) brought this action as a means to unnecessarily delay pending state civil court summary landlord/tenant eviction proceedings.[7]  Frontier seeks monetary sanctions in an amount sufficient to deter repetition of plaintiffs' conduct and an order directing payment for all or part of its reasonable attorneys' fees and other expenses in seeking dismissal and sanctions.

*The Complaint's Allegations*

The complaint contains allegations wholly unsupported by the public record and by the

---

[7] On the evening of June 9, 2014, Frontier learned that plaintiffs' attorney, Arthur Morrison, removed approximately twenty-three (23) summary eviction proceedings from the Second District Civil Court in Lindenhurst, New York, to this Court (14-cv-3624).  By Decision and Order dated August 5, 2014, Judge Arthur D. Spatt remanded the eviction proceedings, holding that there was no objectively reasonable basis supporting the removal because, *inter alia*, none of the claims arose under the United States Constitution or federal law and ordered plaintiffs, many of whom are plaintiffs here, to pay Frontier's attorneys' fees and costs to defend against the baseless removal.

documents upon which it is based and which have been included in, or affirmatively omitted from, its exhibits. As discussed above, the complaint alleges: (1) that if plaintiffs executed the Plan, they would forfeit their rights to the one hundred (100) units, when the Plan contains no language with regard to the units whatsoever; (2) that Resolution 494 nullified Resolution 743; (3) that Resolution 494 nullifies the requirement for the set-aside despite the public record which demonstrates that two (2) sets of covenants and restrictions with the affordable/workforce housing conditions have been recorded against the property; and (4) that Resolution 743 vested plaintiffs with a right to a unit despite the Resolution's plain language requiring applicants to meet certain guidelines, which are controverted by the documentary evidence.

The complaint also alleges that the "Village of Amityville" will not have community diversity since, according to the 2010 census, people "who are white alone make up 81.7% of the population of Amityville." Compl. ¶ 56. However, plaintiffs cite to the complaint's exhibit F, which clearly shows that the statistics are for the incorporated Village of Amityville, and not North Amityville, the actual location of the Property. This census was also a matter of public record and, indeed, was introduced into the record and relied upon by plaintiffs for their racial discrimination claim. In their opposition[8] to Frontier's sanctions motion, plaintiffs continue to rely on the Village census.

Finally, the complaint fails to allege that plaintiffs applied for affordable/workforce housing and were denied as a consequence of agreeing to the Plan and although plaintiffs attached a number

---

[8] Frontier's motion for sanctions is brought pursuant to FRCP 11 and seeks, in the alternative, attorney's fees pursuant to 28 U.S.C. § 1927. Inexplicably, plaintiffs' memorandum addresses discovery sanctions pursuant to FRCP 37 and opposes Frontier's alternative § 1927 motion as premature.

of exhibits to their complaint, they failed to attach the "release" which allegedly terminated their purported rights. The release, however, neither mentions the affordable/workforce housing nor indicates that plaintiffs forfeited their rights to, or are precluded from, applying for said housing. Sanc. Dec. Yaffe, Exh. J.

*The Prior Litigations*

This is the sixth litigation brought by plaintiff Amityville Mobile Home Civic Association ("AMHCA") in an effort to stop or delay the redevelopment of Frontier Park; the first five (5) lawsuits were filed in the Supreme Court of New York, Suffolk County, before the Honorable Joseph C. Pastoressa, where four (4) were dismissed on the merits and the fifth[9] was dismissed upon Frontier's motion for summary judgment. In granting the motion, Judge Pastoressa noted that the action was the "fifth lawsuit[10] commenced since 2012 by plaintiff with respect to the Suffolk County approved and Town of Babylon approved closure and redevelopment of Frontier Park" and held that "[t]his action like all the others plaintiff's counsel has brought is meritless." *Id.* at Exh. F. The decision also chastised attorney Morrison for failing to mention a determination by the New York State Division of Housing and Community Renewal, which rejected claims raised in the fifth action. *Id.* ("Although plaintiff's counsel was aware of said determination it was nowhere

---

[9] Plaintiffs' counsel in this action, Arthur Morrison, Esq., represented AMHCA in the fourth and fifth state court lawsuits.

[10] In that case, AMHCA sought, *inter alia*: (1) a declaratory judgment that Frontier acted with bad faith and unfair dealing by allegedly failing to offer leases to Frontier Park residents for 2012 and 2013; (2) damages for fraud on the basis Frontier Park residents were told, on or about May 1, 2013, that the "status quo" would be maintained for six (6) months; (3) tortious interference with prospective economic advantage in that Frontier Park allegedly destroyed AMHCA's relationship with the developer (which is Frontier Park) for the purpose of depriving the residents of their opportunity to obtain the $20,000 relocation fee; and (4) an injunction enjoining Frontier from terminating all tenancies at Frontier Park.

mentioned in any of the papers plaintiff's counsel submitted to the court.").

Although the state court cases are not binding on this Court, they demonstrate AMHCA's and Mr. Morrison's litigiousness and apparent propensity to lodge baseless allegations, misrepresent documents and affirmatively omit unfavorable evidence.

*Whether Sanctions Are Warranted*

In determining whether sanctions are warranted as well as the type and degree, courts consider: " '(1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern or activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case.' " *Kochisarli*, 2006 WL 721509, at *8 (quoting *Simpson v. Putnam Cnty. Nat. Bank of Carmel*, 112 F. Supp. 2d 284, 291-92 (S.D.N.Y. 2000)).

First, the improper conduct was willful as Resolution 494 did not nullify Resolution 743 and none of the documents attached to plaintiffs' complaint confer any rights to the affordable/workplace housing, or foreclose plaintiffs from applying for such housing, as a consequence of agreeing to the Plan. Omitted from the complaint was the Release with its complete lack of any language conferring rights to plaintiffs. Indeed, in opposing this motion for sanctions, plaintiffs' counsel continues to insist that by executing the Plan, plaintiffs' "property rights" in the affordable housing were terminated and forfeited. Sanc. Mem. in Opp. p. 18.

Second, counsel's behavior is part of a pattern as demonstrated by the numerous state court

filings and Judge Pastoressa's finding that all five (5) cases were meritless, as is this case. Third, counsel's conduct has infected the entire complaint given that this case is based upon demonstrably false allegations and omitted material facts, including misrepresentation by the use of a census which has no bearing on this case. Fourth, counsel engaged in this type of conduct in this Court and the state court in connection with representing AMHCA. Counsel also removed the eviction cases from the Lindenhurst civil court to this Court despite an apparent lack of federal jurisdiction. Fifth, counsel's conduct has wasted the state court's and this Court's time by requiring both courts to wade through specious arguments and exhibits; omitting relevant documents and determinations; and submitting documents that are not what they are purported to be. Sixth, Mr. Morrison is an attorney and is trained in the law.

As to the seventh factor, FRCP 11(c)(4) provides that a "sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Appropriate sanctions "include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation

Monetary sanctions alone have not effectively deterred plaintiffs' counsel's conduct. In *Aloyts v. 601 Tenant's Corp.*, No. 06 Civ. 30043, 2009 WL 982184, at *3 (N.Y. Sup. Ct. Apr. 13, 2009), and by Order of the Honorable Carolyn E. Demarest, Supreme Court, State of New York, Mr. Morrison and defendants were directed to pay the sum of ten-thousand dollars ($10,000) in costs and attorney's fees, jointly and severally, to plaintiff's counsel "for their failure to make prompt and complete disclosure," as directed by the court, and "for their course of conduct in

seeking to delay and prolong the resolution" of the case "by failing to produce witnesses for depositions as requested, failing to timely provide documents and for repeatedly interposing meritless and premature motions for summary judgment in an effort to avoid disclosure."

Eight (8) months later, Mr. Morrison was sanctioned in the sum of three-thousand, five-hundred and seventy-five dollars ($3,575),[11] based upon a finding by the Honorable John Gleeson, District Judge, Eastern District of New York, that Mr. Morrison had alleged " 'no colorable bases for federal jurisdiction,' " *Calabro v. Aniqa Halal Live Poultry Corp.*, No. 09 Civ. 4859, 2009 WL 4893200, at *3 (E.D.N.Y. Dec. 15, 2009), in removing *Calabro* from state to federal court. *Calabro v. Aniqa Halal Live Poultry Corp.*, No. 09 Civ. 4859, 2011 WL 4056046, at *1 (E.D.N.Y. Sept. 12, 2011). Mr. Morrison appealed the decision to the Second Circuit, which was dismissed, and plaintiff moved for an additional two-thousand, two-hundred and seventy-five dollars ($2,275) in legal fees, which was referred to the Magistrate Judge. *Id.* The Magistrate Judge recommended that the motion be granted and Judge Gleeson ordered Mr. Morrison to pay an additional five-thousand, eight-hundred and fifty dollars ($5,850) to plaintiff's counsel. *Id.*

As discussed above, Mr. Morrison was recently ordered to pay Frontier's attorneys' fees and costs in moving to remand landlord/tenant eviction proceedings back to Lindenhurst civil court based upon Judge Spatt's finding that there was no basis for federal jurisdiction.

***Whether a Filing Injunction is an Appropriate Sanction***

Pursuant to the All Writs Act, 28 U.S.C. § 1651(a),[12] this Court has the power to issue an

---

[11] Judge Gleeson ordered Mr. Morrison to pay plaintiff's legal fees and costs associated with the removal.

[12] The statute provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to

injunction restricting vexatious litigation. In order to determine whether a litigant's access to the court system should be restricted, the following factors are to be considered: "(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties." *Iwachiw v. New York State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (citing *Safir v. United States Lines, Inc.*, 792 F.2d 19, 24 (2d Cir. 1986)).

This is the sixth lawsuit,[13] against Frontier brought by plaintiff AMHCA and Mr. Morrison has been its counsel for the last three (3). In light of Judge Pastoressa's decisions and based upon there being no basis for federal jurisdiction in this case, the litigation is vexatious and harassing and neither AMHCA, nor Mr. Morrison have demonstrated an objective good faith belief that they will prevail. Furthermore, money sanctions alone have not had the desired effect of curbing unwarranted litigation and, thus, other sanctions are necessary to protect the courts and Frontier.

"The unequivocal rule in this circuit is that the district court may not impose a filing injunction on a litigant *sua sponte* without providing the litigant with notice and an opportunity to be heard." *Lau v. Meddaugh*, 229 F.3d 121, 123 (2d Cir. 2000) (citing *Moates v. Barkley*, 147 F.3d 207, 208 (2d Cir. 1998)). **Accordingly, AMHCA and Mr. Morrison are hereby warned**

---

the usages and principles of law."

[13] AMHCA was not part of the landlord/tenant eviction suit that was improperly removed to this court, although Mr. Morrison was the attorney of record.

**that if they continue to pursue these matters and engage in vexatious and harassing litigation, they will be subject to a filing injunction**.

Frontier's motion for sanctions in the form of reasonable attorneys' fees and costs is granted to the extent that Frontier is directed to serve on plaintiffs, by April 20, 2015 and in compliance with my Individual Rule 4, detailed information regarding attorneys' fees and costs incurred in the preparation of its motion for sanctions. Mr. Morrison's opposition, if any, is to be served, but not filed, by May 20, 2015. Frontier will then serve its reply and file, on or before June 3, 2015, the fully briefed motion for attorneys' fees and costs.

### III.  Conclusion

Frontier's motion to dismiss for lack of subject matter jurisdiction is **GRANTED** and plaintiffs' complaint is dismissed with prejudice. Frontier's motion for Rule 11 sanctions is **GRANTED** and **AMHCA and Mr. Morrison are hereby warned that a filing injunction shall issue if they continue to pursue this matter**. The parties shall brief the issue of attorneys' fees and costs as set forth above.

**SO ORDERED**.

Dated: March 26, 2015
       Central Islip, New York

                                        Sandra J. Feuerstein, U.S.D.J.